Argued January 3, reversed and remanded March 12, 1918.

## ALLIANCE TRUST CO. v. HUBBARD.

### (171 Pac. 550.)

**Appeal and Error—Necessity of Remand—Receiver's Accounts.**

1. In suit to foreclose mortgages, the court, pursuant to their stipulations, having appointed a receiver to take charge of and collect the rents and profits of the property, and such receiver having collected the rents and paid current expenses, it will be necessary for the trial court to ascertain the amount the receiver has to apply on plaintiff's mortgages, and the suit will be remanded for final decree after making deduction of the amount available.

**Attorney and Client—Acting for Different Parties.**

2. Where an owner contracted for the erection of a building, and gave mortgages to secure the money, there was no impropriety in her attorney's acting as attorney for the contractors against the bank which advanced the money for construction after his relations with the owner, as her attorney, had ceased.

**Mortgages—Priority of Liens—Assignment of Lease.**

3. A note executed by the owner of a building and secured by her assignment of a lease of part thereof created a lien which must be postponed to the liens of the owner's mortgages, except in so far as one of the mortgages, subsequent to the assignment, may be affected by the rentals that have been or may be collected on the lease.

[As to priority as between purchase-money mortgage and other lien or claim, see note in Ann. Cas. 1916C, 945.]

From Marion: WILLIAM GALLOWAY, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

On May 14, 1912, plaintiff; the Alliance Trust Company, Limited, loaned to defendant, Fanny E. Hubbard, $45,000 and as security for the payment thereof she executed and delivered to it a mortgage upon the east half of lots 1 and 2 in block 20 in the City of Salem, upon which the Hubbard Building is situated at the southwest corner of State and High Streets, the mortgage covering other city property and also a farm of 202 acres near Salem.    On June 7, 1912, the mortgagor repaid $15,000 of this loan and the property in block thirty of the City of Salem was released from the mortgage and the principal of the debt was reduced to $30,000.    The loan was to be used in the erection of the Hubbard Building.    Subsequently the mortgagor changed her plans in regard to the building and concluded to add two additional stories to the original plan, making four stories.    To enable her to finance her larger plans she applied to the plaintiff for an increase of loan.    On September 16, 1912, plaintiff loaned her an additional sum of $30,000, and to secure the same she executed to plaintiff a second mortgage covering the Hubbard Building property and the farm. This loan was evidenced by a series of nine principal notes, eight for $2,000 each, one maturing on the first day of May and November of each year from November 1, 1913, to May 1, 1917, and one for $14,000 maturing November 1, 1917.    Upon the completion of the building Mrs. Hubbard found herself unable to meet her obligations to her contractors, the defendants, Welch Brothers, and in order to prevent lien foreclosures she applied to plaintiff for a third loan of $10,000. On July 28, 1913, plaintiff loaned her this sum, taking her note for the same and as security she executed a

third mortgage covering the Hubbard Building property and the farm. Each of the principal notes was so drawn as to bear interest after maturity at the rate of 8 per cent per annum. The loan secured by the first mortgage was to bear interest from date until the maturity of the principal note at the rate of 7 per cent per annum as evidenced by a series of ten interest notes representing semi-annual installments of interest payable May 1st, and November 1st of each year from November 1, 1912, to May 1, 1917. The loan secured by the second mortgage was to bear interest from date until maturity at the rate of 7 per cent per annum, as evidenced by a series of eleven interest notes representing semi-annual installments of interest payable May 1st and November 1st of each year from November 1, 1912, to November 1, 1917. The loan secured by the third mortgage was to bear interest from date until maturity at the rate of 8 per cent per annum as evidenced by a series of nine interest notes representing semi-annual installments of interest payable May 1st and November 1st of each year from November 1, 1913, to November 1, 1917. Among other covenants contained in plaintiff's mortgages was one that the mortgagor would keep the buildings upon the mortgaged premises insured against loss or damage by fire in the sum of $50,000, and it was provided that if the mortgagor should fail to procure such insurance or fail to pay the premiums therefor, the mortgagee might procure such insurance and at its option pay the premiums therefor, and any amount so paid with interest at 10 per cent per annum should be added to and become a part of the debt secured by said mortgages. The mortgagor failed to keep up her insurance as agreed and, in order to protect its lien the plaintiff on May 15, 1915, advanced and paid insurance premiums to the amount

of $927, no part of which was ever paid by the mortgagor.

The mortgagor wholly failed to comply with the conditions of said mortgages. She defaulted in the payment of taxes for the year 1914; in the payment of interest on all of said loans; and in the payment of installment principal notes secured by the second mortgage. By reason of these defaults on August 18, 1915, plaintiff commenced this suit in the Circuit Court for Marion County for the foreclosure of all of said mortgages. At that time, in addition to the arrears of $927 in insurance premiums, the mortgagor was in default to the amount of $1,050, interest on the first mortgage; $2,100, interest on the second mortgage; $8,000, principal on the second mortgage; and $800, interest on the third mortgage; besides a large amount of accrued interest on the delinquencies. In each of plaintiff's mortgages the mortgagor expressly agreed that in case of foreclosure she would pay such a sum as the court might adjudge reasonable as attorney's fees to be allowed the plaintiff in such suit. In the complaint it was alleged that $2,000 was a reasonable sum to be allowed as attorney's fees for the foreclosure of the first mortgage; $2,000 for the second mortgage; and $1,000 for the third mortgage. Plaintiff asked for $927 for insurance premiums paid by it. On August 30, 1915, defendant, Fannie E. Hubbard, filed an answer admitting every allegation of plaintiff's complaint, except certain portions not material to this appeal, and except as to the reasonableness of the attorney's fees, admitting that $500 would be a reasonable fee for each of said mortgages. On April 20, 1916, she filed an amended answer expressly admitting all the other allegations of the complaint. She withdrew her admission as to the $927, insurance item, and

denied that plaintiff had been compelled to advance more than $630 for such insurance premiums; and so amended her answer as to admit $250 a reasonable fee for foreclosing each of the three mortgages, or a total of $750.  After considerable delay, on December 21, 1916, a decree was entered in favor of the plaintiff and against the defendants.

Plaintiff was given judgment against defendant, Fannie E. Hubbard, for all amounts prayed for upon the several notes and secured by the respective mortgages.  But upon the item of insurance premiums plaintiff was only allowed judgment for $630, and an aggregate sum of $750 as attorney's fees.  By the terms of the decree it was further provided that no execution should be issued to enforce the same before November 1, 1917.  From the provisions of the decree relating to the items of insurance and attorney's fees and the inhibition concerning the issuance of execution, the plaintiff appeals.  None of the defendants appealed from the decree in favor of plaintiff.

                           REVERSED AND REMANDED.

For plaintiff-appellant, the Alliance Trust Company, Limited, there was a brief and an oral argument by *Mr. Earl C. Bronaugh.*

For defendant-appellants, Welch Bros., there was a brief with oral arguments by *Mr. John Bayne* and *Mr. John H. McNary.*

For defendant-appellant, John Bayne, there was a brief over the name of *Messrs. Smith & Shields,* with an oral argument by *Mr. Guy O. Smith.*

For defendant-respondent, The United States National Bank of Salem, Oregon, there was a brief over

the name of *Messrs. Carson & Brown,* with an oral argument by *Mr. Thomas Brown.*

For defendant-respondent, Fannie E. Hubbard, there was a brief with an oral argument by *Mr. Alva O. Condit.*

MR. JUSTICE BEAN delivered the opinion of the court.

After reading the 411 pages of typewritten testimony, much of which is immaterial, and a recitation of which would be of no value to anyone, we will consider the plaintiff's appeal before taking up those of the defendants, Welch Brothers, and John Bayne. As to the premiums for the insurance it is shown that while it would have been possible to obtain a less rate, that paid by the plaintiff was the regular rate for property of that kind in the City of Salem at that time. It may be that the plaintiff could have obtained insurance for a term of three years at a less rate, and Mrs. Hubbard complains that this was not done. It is nowhere shown, however, that at the time of her request for insurance she suggested that the plaintiff obtain an insurance policy for a longer time, and it does not appear that plaintiff was aware that a long time would elapse before the matter would be in some way adjusted. The amount of insurance premiums of $927 paid by plaintiff according to the terms of the mortgages was reasonable as a valid claim to be added to plaintiff's mortgages and is allowed. According to the judgment of practicing attorneys, the evidence as to a reasonable sum for attorney's fees, foreclosing the three mortgages for the principal sums of $70,000, and interest and insurance premiums, was 5 per cent on the amount due, for services in the Circuit Court, and from $300 to $1,000 in case of an appeal. Con-

sidering all the facts relating to plaintiff and the various defendants we think the reasonable amount to be allowed plaintiff for attorney's fees in this suit is $2,500. November 1, 1917, the time limited by the lower court for the issue of execution has passed and the matter need not be considered at length. Plaintiff was entitled to have execution issue.

1. It appears from the record that pursuant to the stipulations of the mortgages the court appointed a receiver to take charge of and collect the rents and profits of the mortgaged property; that the rents have been collected; and the current expenses of the property have been paid by the receiver. It will be necessary for the trial court to ascertain the amount which the receiver has to apply upon plaintiff's mortgages, and the suit will therefore be remanded to the Circuit Court for a final decree to be entered, after making a deduction of the amount available for such purpose.

MORTGAGE OF DEFENDANTS, WELCH BROTHERS.

On May 28, 1912, defendant, Fannie E. Hubbard, made a contract with defendants, Welch Brothers, for the construction of the Hubbard Building which they immediately commenced. Afterwards the contract was modified and two additional stories, with other alterations, were added to the building. The agreement then was that Welch Brothers should construct the building for the actual cost thereof plus $4,800 commission. It was completed about January 1, 1913, when Mrs. Hubbard and Welch Brothers had a settlement as to its cost. On January 29, 1913, Welch Brothers filed a mechanic's lien for the balance which they claimed to be then due therefor. Mrs. Hubbard made some payments before February 18, 1913, when she and Welch Brothers entered into an agreement that

the cost of the building under the terms of the contract for the construction thereof, including commission to the contractors, amounted to $74,016.74 and that there had been paid on account thereof $55,584.57, leaving a balance due Welch Brothers of $18,432.17; that Mrs. Hubbard would pay interest on such balance at the rate of 8 per cent per annum from the date of filing the lien; and that Welch Brothers would defer the foreclosure of such lien for five months from the date of filing the same. This was in order to give Mrs. Hubbard an opportunity to secure the money for the payment of the balance. Subsequently Mrs. Hubbard paid $20 to the Oregon Art Tile Company which was credited upon the balance, leaving $18,412.17. Mrs. Hubbard was unable to secure sufficient money to pay Welch Brothers, but obtained an agreement from the plaintiff to loan her $10,000 to be paid them and to be secured by its third mortgage provided Welch Brothers would release their mechanic's lien and take a note secured by a fourth mortgage for the amount due after applying the $10,000. A written agreement that this should be done was entered into on July 26, 1913, and on July 28, 1913, after the payment of the $10,000 to Welch Brothers, it was ascertained that the balance due them from Mrs. Hubbard was $9,148.65, and Mrs. Hubbard executed to them a note and mortgage to secure the payment of the amount. Mrs. Hubbard paid interest to Welch Brothers on that note and mortgage to January 28, 1915, but failed to pay the interest due July 28th of that year. On August 30, 1915, Welch Brothers filed their answer and cross-complaint setting up their note and mortgage. No answer was filed to this cross-complaint until April 21, 1916, when by leave of court Mrs. Hubbard answered it. The mortgage of Welch Brothers covered the in-

come of the mortgaged premises as well as the premises themselves. In her answer Mrs. Hubbard set up that she had paid Welch Brothers over $65,000 on account of the construction of the building for which they had never accounted to her, and that by misrepresentations and misstatements they induced her to sign such note and mortgage to them and that she believed that if an accounting were had it would appear to the court that they misappropriated funds and that she was not indebted to them in any sum. This was denied by the reply. Defendants Welch Brothers were required by the trial court to make another accounting which they did. There are no facts or circumstances alleged in the answer to Welch Brothers' cross-complaint sufficient to impeach the note and mortgage. Passing this, however, the evidence which we have carefully weighed shows that the main difficulty in the construction of the building was that it cost more than Mrs. Hubbard expected and perhaps she was unable to realize from the income the amount she had expected to be able to apply to the satisfaction of the indebtedness. The evidence, the several settlements, and the accounting made in the trial court show that the business was conducted on her behalf in a fair business-like way. The money paid by Mrs. Hubbard to Welch Brothers and the balance due them, for which the note and mortgage were given, are shown to have been expended in the construction of the building, with the exception of their commission of $4,800. Much of the material for the building was purchased from reliable business concerns at competitive prices. Mrs. Hubbard had the services of an architect against whom there is no complaint, and the erection of the structure was superintended under his direction during all the time consumed in its construction. Mrs. Hubbard

understood all the facts and circumstances relating to the construction of the building at the time of the settlements which were evidenced by written agreements with Welch Brothers, as well as she or any of her witnesses did at the time of the taking of the evidence.   There is in evidence some random guesses made by contractors to the effect that they estimated the cost of the third and fourth stories of the building at a much less figure than the actual cost.   There were also figures made by a contractor estimating the cost of the two additional stories from the plans and specifications.   Important changes were made in these plans.   They were not followed in the construction. A portion of the first story was constructed for a depot for the Oregon Electric Railway Company.   The building contains a theater, a photograph gallery and a barber-shop.   Radical changes were made in the arrangements for the elevator necessitating a change in the roof thereof and other alterations were made in order to effectuate the conveniences for the several uses for which the building was designed.   It seems to us that the questions of law involved are too plain for discussion.   The trial court rendered a decree canceling the note and mortgage of Welch Brothers executed by defendant Fannie E. Hubbard to Welch Brothers and awarding her costs and disbursements. The decree of the lower court in this respect is reversed and one will be directed to be entered in that court in favor of Welch Brothers for the sum of $9,148.65 with interest at the rate of 8 per cent per annum from January 28, 1915, together with the further sum of $400, attorney's fees in this suit, and foreclosing their mortgage as prayed for in their cross-complaint.   The mortgage of defendants, Welch Brothers, will be declared to be next in time and right

to the mortgages of the plaintiff.  Welch Brothers' mortgage covers the income from the mortgaged premises and provides that the net amount thereof shall be applied to the payment of plaintiff's mortgages and then to the mortgage of Welch Brothers.  It is claimed by Welch Brothers that between September 5, 1913, and August 2, 1915, Mrs. Hubbard expended a portion of the income of the mortgaged premises to the amount of $759.79 in purchasing furniture and furnishings for the rooms in the Hubbard Building, and that the same are now in said building and are a part of the income thereof and subject to their mortgage.  The funds mentioned are not traced and the personal property is not segregated nor described in the record so as to enable this court to render a decree in regard thereto.

## MORTGAGE OF JOHN BAYNE.

2. During the time of the construction of the Hubbard Building and for a long time prior thereto defendant John Bayne was employed by Mrs. Hubbard as attorney and counselor and rendered services in regard to various matters as her attorney and business manager, all of which are detailed in the evidence at great length.  On July 23, 1912, Mrs. Hubbard executed to defendant Bayne a promissory note in the principal sum of $500 due on or before three years from date. On January 2, 1915, she executed another note for $1,000 in favor of Bayne with interest at 6 per cent per annum in consideration of services rendered.  On August 3, 1915, to secure these notes Mrs. Hubbard executed a fifth mortgage on the premises mortgaged to plaintiff and defendants Welch Brothers.  No payment was made on these notes except $30 interest on the $500 note on August 2, 1913.  On October 6, 1915, defendant Bayne answered the complaint of the Alli-

ance Trust Company and by a cross-complaint set up his notes and mortgage. Defendant Hubbard filed no answer to this cross-complaint until April 21, 1916, when she applied to answer. Her answer admits that she signed the $500 note and the $1,000 note and executed the mortgage; that no payments have been made on the smaller note except $38 on August 2, 1913; that no payments have been made on the $1,000 note; and denies the remainder of the cross-complaint. She further alleges that for many years John Bayne acted as her attorney; that she paid him a large amount of money on account of his alleged services, the amount of which she is unable to state; and that he never accounted to her therefor; that during the years 1912, 1913, 1914 and a part of 1915, while she was engaged in the construction of the Hubbard Building, under contract with the defendants Welch Brothers, defendant John Bayne acted as attorney and legal adviser for her and that she

"has been informed and believes that during said time the said defendant, John Bayne, was acting as attorney for defendants, Welch Brothers; and that the interests of said Welch Brothers were antagonistic to the interests of this defendant and that the said defendant, John Bayne, did not properly safeguard and protect the interests of this defendant, and that through the negligence and inattention of said defendant, John Bayne, a large amount of money has been lost to this defendant";

that at the time of giving the notes mentioned in Bayne's cross-complaint he represented to her that the amounts named in the notes were due from her to him; and that this defendant relying upon said representations executed said notes,

"but that this defendant is informed and believes that if said defendant John Bayne were required to properly account to this court for the moneys received by

him from this defendant and for the services rendered that it would be ascertained by the court that no money is due to said defendant John Bayne, from this defendant.''

The allegations of the answer to Bayne are but little more, if anything, than an insinuation. No facts are alleged showing that the notes were executed without consideration or were fraudulent. Neither does the evidence of the case show any defense to the notes or mortgage. The court required an accounting to be made from the evidence in regard to which it appears that every dollar was accounted for by the attorney and that faithful services were rendered by Bayne in behalf of Mrs. Hubbard. It is plainly demonstrated that there was no foundation existing for the allegations of Mrs. Hubbard in this respect and that she was ill-advised as to the matter upon which to base her belief and frame her answer. The money for which the notes were given was earned by the defendant Bayne, a fair settlement therefor was made with Mrs. Hubbard, and the notes were executed. In an endeavor to protect him she executed the mortgage in question. After the termination of the business relations between defendant Bayne and Mrs. Hubbard and the settlement therefor, at the request of Welch Brothers, Bayne acted as attorney for them and filed an answer in a suit commenced by the plaintiff to foreclose its mortgages. He was no longer in the employ of Mrs. Hubbard and knew of no contemplated defense to the mortgage of Welch Brothers. When controversy arose between Mrs. Hubbard and Welch Brothers in regard to their accounting, Mr. Bayne had other counsel appear with him in the case. We see no impropriety in his acting as attorney for Welch Brothers after his relations with Mrs. Hubbard as her

attorney had ceased. The fact that Bayne drew the mortgage to Welch Brothers which was examined by other counsel for the contractors constitutes no defense to either of the mortgages in question. Counsel for Mrs. Hubbard stated at the trial that there was no objection to Attorney Bayne's appearing in the suit for Welch Brothers. The trial court rendered a decree canceling the notes and mortgage of defendant John Bayne. This decree is reversed and one directed to be entered in favor of defendant John Bayne for the amount of his notes and the foreclosure of his mortgage as prayed for in his cross-complaint. The sum of $150, attorney's fees, is allowed as a reasonable amount for foreclosing such mortgage. The mortgage of defendant John Bayne will be declared to be next in time to the mortgages of plaintiff and the mortgage of defendants Welch Brothers.

### CLAIM OF UNITED STATES NATIONAL BANK.

3. On April 29, 1914, defendant Fannie E. Hubbard obtained a loan from the defendant, United States National Bank, amounting to $4,775, for which she executed a promissory note payable on demand with interest at the rate of 8 per cent per annum. In order to secure the payment of the same Mrs. Hubbard assigned a lease made by her to the Oregon Electric Railway Company, a corporation, on February 16, 1912, for a portion of the Hubbard Building, and authorized the company to pay the monthly rentals to the bank. This note has been reduced to the amount of $1,241, and interest thereon from the date of the note, by payment of such rentals and by payments made by Mrs. Hubbard. It follows that the decree of the Circuit Court as to the United States National Bank for the sum of $1,241, with interest at the rate of 8 per cent

per annum from September 30, 1915, and for $75 attorney's fees, declared to be a lien upon said Hubbard Building and the land upon which the same is situated, will be postponed to the liens of the mortgages above mentioned, save and except in so far as the mortgage of John Bayne may be affected by the rentals that have been or may be collected upon the said lease, which assignment of lease is prior in time to the mortgage of defendant John Bayne. The decree of the lower court as to the defendant, United States National Bank, will be modified accordingly.

All necessary computation and adjustment not herein specified can be made at the time of the accounting of the receiver herein provided for. The cause will therefore be remanded to the lower court for such accounting and entry of decree therein in accordance herewith.

Reversed and Remanded.

Mr. Justice Moore and Mr. Justice McCamant took no part in the consideration of this case.